UNITED STATES of America ex rel. Jose Mario MARTINEZ, Appellant,

v.

Noah L. ALLDREDGE.

No. 72-1086.

United States Court of Appeals, Third Circuit.

Submitted June 20, 1972 Under Third Circuit Rule 12(6).

Decided Oct. 17, 1972.

Arthur F. Loeben, Jr., Pottstown, Pa., for appellant.

S. John Cottone, Scranton, Harry A. Nagle, Jr., Lewisburg, Pa., for appellee.

Before ALDISERT, JAMES ROSEN, and HUNTER, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

██ This appeal from a denial of a petition for a writ of habeas corpus requests this court to reconsider our decision in United States ex rel. Halprin v. Parker, 418 F.2d 313 (3d Cir. 1969). Appellant contends that the Fifth Amendment's guarantee of due process and the Sixth Amendment's guarantee of assistance of counsel require appointment of counsel to represent indigent releasees in a mandatory release revocation hearing.

The weight of federal authority being in accord with our view, we are not disposed to modify *Halprin. See,* Ellhamer v. Wilson, 445 F.2d 856 (9th Cir. 1971), cert. den. sub nom., Hinnington v. Department of Corrections, 405 U.S. 997, 92 S.Ct. 1258, 31 L.Ed.2d 466 (1972); Bearden v. South Carolina, 443 F.2d 1090 (4th Cir. 1971), cert. granted sub nom., Midgett v. Slayton, 405 U.S. 916, 92 S.Ct. 965, 30 L.Ed.2d 785, cert. dis., 405 U.S. 972, 92 S.Ct. 1199, 31 L.Ed.2d 256 (1972); Heezen v. Daggett, 442 F. 2d 1002 (8th Cir. 1971); Woods v. Texas, 440 F.2d 1347 (5th Cir. 1971); Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, cert. den. sub nom., Thompson v. United States Board of Parole, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963). Our research discloses no court of appeals decision holding that appointed counsel for indigents is constitutionally required at a mandatory release revocation hearing at which the factual grounds for revocation are uncontroverted.[1]

I

On April 11, 1963, Martinez was convicted of violating 21 U.S.C. §§ 173 and 174 (narcotics), and sentenced to ten years imprisonment. On February 14, 1969, he was granted a mandatory release on parole from the U. S. Penitentiary, Lewisburg, Pennsylvania, under the provisions of 18 U.S.C. §§ 4163 and 4164. After being arrested thereafter by New York State authorities on a charge of possession of cocaine, he entered a plea of guilty in the New York State courts and was sentenced to prison for eleven months.

On January 22, 1970, while Martinez was still in state custody, the U. S. Board of parole issued a mandatory release violator's warrant for his arrest. One of the reasons for the issuance of the Parole Board warrant was Martinez's arrest on the New York State narcotics charge. Upon his release from state custody on November 2, 1970, he was taken into federal custody on the Parole Board warrant. On December 1, 1970, he was afforded a preliminary interview by the U. S. Probation Office for the Southern District of New York. At that time he waived the right to a local revocation hearing, executed a waiver of counsel form, and admitted that he had violated one or more of the conditions of his release, to-wit, he admitted his arrest, plea, conviction and sentence on the New York narcotics charge.

Martinez now contends that these admissions were made only after his requests for counsel were refused and he had been informed that counsel would not be provided. Martinez claims that

---

1. The Tenth Circuit is in accord with our view where the facts of parole or mandatory release revocation are uncontroverted. Cotner v. United States, 409 F.2d 853 (10th Cir. 1969). Although United States ex rel Bey v. Connecticut State Board of Parole, 443 F.2d 1079 (2d Cir.), appears to hold otherwise, the judgment was vacated and cause dismissed as moot, 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159 (1971). Moreover, Bey has been distinguished by the Fourth Circuit on the basis of the "factual com-

plexity" of that case which involved "psychiatric evaluation" of "disputed behavior and its significance." Bearden v. South Carolina, *supra,* 443 F.2d at 1094.

As to whether counsel is required in a Wisconsin state revocation proceeding, see Goolsby v. Gagnon, 322 F.Supp. 460 (E.D.Wis.1971), for parole revocation; Gunsolus v. Gagnon, 454 F.2d 416 (7th Cir. 1971), cert. granted, Gagnon v. Scarpelli, 408 U.S. 921, 92 S.Ct. 2490, 33 L.Ed.2d 331 (1972), for probation revocation.

these admissions would not have been made if he had been provided counsel. Putting aside the obvious—that the Board of Parole knew of the violation and could prove its existence without his admission because the Board had executed the arrest warrant while Martinez was in state custody serving state time for an offense committed while on federal parole, an offense which he admitted committing by his plea of guilty in New York—we now turn to appellant's right of counsel contention.[2]

Although neither at the hearing nor in these proceedings does appellant controvert that he indeed committed the state offense, and, in doing so, violated the terms of his federal parole, he nevertheless urges that the Sixth Amendment guaranteed the right to appointed counsel at his parole revocation hearing. He claims that the mandatory release revocation hearing is a critical stage in a criminal prosecution at which important rights may be lost. *Cf.*, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Martinez relies on Mempa v. Rhay, 389 U.S. 128, 88 S. Ct. 254, 19 L.Ed.2d 336 (1967), as extending the right to appointed counsel to an indigent mandatory releasee at a revocation hearing. This reliance is misplaced. *Mempa* involved a deferred sentencing proceeding following revocation of *probation* which was in reality an extension or continuation of the *original criminal prosecution*. See Earnest v. Willingham, 406 F.2d 681, 683 (10th Cir. 1969). Distinguishing Mempa v. Rhay, the Supreme Court has more recently stated, "[R]evocation of parole [mandatory release] is not a part of a criminal prosecution. . . ." Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Since by its terms the Sixth Amendment governs only "criminal prosecutions," Counsel-

man v. Hitchcock, 142 U.S. 547, 12 S. Ct. 195, 35 L.Ed. 1110 (1892), it is inapplicable to a mandatory release revocation hearing.

Relying on the due process clause, Martinez attacks the holding of *Halprin* as unsound, contending it is the progeny of Escoe v. Zerbst, 295 U.S. 490, 55 S. Ct. 818, 79 L.Ed. 1566 (1935), and cases following *Escoe*, which, in the context of due process, made an artificial distinction between a right and a privilege. He argues that *Halprin* treated a revocation hearing as a privilege to which the constitutional guarantee of due process did not apply. From this premise his argument proceeds through the repudiation of the right-privilege distinction in Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970), and concludes that the fully panoply of due process rights accorded the accused in a criminal prosecution become applicable to a mandatory release revocation hearing, including the right to appointed counsel for indigents when retained counsel is permitted to those who can afford representation. Gideon v. Wainwright, *supra*.

Appellant's argument has superficial appeal. It is true that the district court's memorandum opinion in *Halprin* was based upon the authority of Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963), cert. den. sub nom., Thompson v. United States Board of Parole, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963). Indeed, *Hyser* does cite *Escoe* regarding the Supreme Court's rejection of probationers' claims that in all circumstances due process required a full dress hearing by a United States district court before revocation of probation. However, in *Hyser*, Judge, now Chief Justice, Burger carefully avoided "indulging in semantical exercises as to whether the operation of the parole sys-

<hr>

2. Here the facts of Martinez's arrest, guilty plea and conviction, were matters of public record, of which a court may take judicial notice. *See* Mainer v. United States Attorney General, 429 F.2d 389 (5th Cir. 1970), estopping a parolee who had pled guilty to a felony under state law from contesting the fact of his parole violation. *See also*, Bearden v. South Carolina, *supra*, n. 1, 443 F.2d at 1094–1095.

tem gives rise to 'rights' or 'privileges' in the parolee. . . ." 318 F.2d at 239. Furthermore, *Halprin* neither approved *Hyser* nor accepted the right versus privilege rationale which appellant contends has been rejected by the Supreme Court. Accordingly, Goldberg v. Kelly has no effect upon the vitality of *Halprin*.

Moreover, even accepting that *Halprin* is founded upon the right-privilege dichotomy, as advanced by appellant, it does not necessarily follow that due process requires appointment of counsel for indigents at mandatory release revocation hearings. Addressing itself to the due process issue in Morrissey v. Brewer, *supra*, 408 U.S. 471, 92 S.Ct. 2593 (1972), the Supreme Court stated: "[T]he revocation of parole [mandatory release] is not a part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole [mandatory release] revocations." 408 U.S. at 480, 92 S.Ct. at 2600. Thus, while the Supreme Court "has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege' . . . ," Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L. Ed.2d 534 (1971), the Court has indicated that "whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.'" Morrissey v. Brewer, 408 U.S. at 480, 92 S.Ct. at 2600, quoting Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951). The precise issue before us has been succinctly framed by Chief Justice Burger, "Once it is determined that due process applies, the question remains what process is due." Morrissey v. Brewer, 408 U.S. at 480, 92 S.Ct. at 2600.

█ Procedural due process is not a scientifically exact concept to be applied rigidly and uniformly to a wide range of disparate situations. Rather the concept is flexible, and is translated into specific safeguards only after evaluating the nature of the governmental function involved and the private interest to be affected by governmental action. Caferia & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). When presented with the question of a parolee's right to a hearing before revocation of his parole in *Morrissey*, the Supreme Court analyzed the private and governmental interests involved, and concluded that due process required a hearing before parole revocation. However, the Court stated: "We do not reach nor decide the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." 408 U.S. at 488, 92 S.Ct. at 2604. In light of an explicit statement by the Court that this issue remains open, we cannot find Mempa v. Rhay to be controlling.

## II.

In evaluating the private and governmental interests to be balanced to determine the parameters and nature of due process required in a mandatory release revocation hearing, we limit ourselves to the situation presented by the facts of this case, *viz.*, one in which the facts upon which revocation is predicated are uncontroverted.[3] Thus posited, the private and governmental interests do not

3. *See*, United States ex rel. Bradshaw v. Alldredge, 432 F.2d 1248, 1250 (3d Cir. 1970). The validity of this limitation has been recognized elsewhere. Although holding on equal protection grounds that an indigent parolee had a right to appointed counsel at a parole revocation hearing, Earnest v. Willingham, *supra*, the Tenth Circuit limited the holding in *Earnest* to cases in which a factual con-

troversy concerning the grounds for revocation exists. Cotner v. United States, *supra*, n. 1; Earnest v. Moseley, 426 F.2d 466 (10th Cir. 1970). Because of the limitation of *Earnest* by Cotner, on the facts of this case we need not consider the validity of the *Earnest* rationale. *See also*, Jones v. Rivers, 338 F.2d 862, 875 (4th Cir. 1964) (Sobeloff, J., concurring).

fit the classic mold of adversariness as, for example, the configuration of the prosecution and the accused in a criminal case. This type of hearing is not designed to reach findings to be ascertained from conflicting assertions of fact. The rules of evidence are not applicable to this informal hearing and, hence, do not present an obstacle to a mandatory releasee untrained in the law. No adversary representing the government is present, actively pursuing interests antagonistic to the interests of the mandatory releasee; rather the releasee is confronted by uncontroverted facts of a parole violation. Under such circumstances, this court and the other circuits hold that the releasee can adequately protect his interests without the necessity of counsel.

Having concluded that due process does not require appointment of counsel for an indigent releasee at a mandatory release revocation hearing at which no factual controversy exists, we adhere to our prior holding of *Halprin* and find no constitutional deprivation.

The judgment of the district court will be affirmed.