**Louis Ashley COTNER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 11–68.**

United States Court of Appeals
Tenth Circuit.

April 30, 1969.

Joseph G. Beeler, Boulder, Colo., for appellant.

John R. Martin, Asst. U. S. Atty., Topeka, Kan. (Benjamin E. Franklin, U. S. Atty., Kansas City, Kan., on the brief) for appellee.

Before BREITENSTEIN, HILL and HICKEY, Circuit Judges.

HILL, Circuit Judge.

Appellant, an inmate at the federal penitentiary in Leavenworth, Kansas, filed a habeas corpus petition in the district court seeking his release from detention. An order dismissing the petition without a hearing was appealed to this court and remanded for a hearing on the merits. Cotner v. Willingham, 387 F.2d 132 (10th Cir. 1967). On remand a hearing was held and the court again denied the petition prompting this appeal.

After conviction in the District of Arizona for violating the Dyer Act, appellant was sentenced to a total of ten years imprisonment. In July, 1966, with 1310 days remaining to be served, he was given a mandatory release under 18 U.S.C. § 4163 and allowed to return to Arizona. Some three months later a warrant was issued charging him with leaving the district without permission, failing to submit his September supervision report, and absconding from supervision. He was arrested on November 10, 1966, at Winslow, Arizona, and transferred to the county jail in Prescott. Five days later, at an interview conducted by his parole officer, he admitted leaving the district without permission. He denied, however, that he had absconded or that he had failed to submit his September report. He also denied a statement in the warrant application that indicated he had been discharged by his employer.

The parole officer presented the appellant with the Standard Form 59A, Attorney-Witness Election Form, which is designed to inform violators of the rules relating to preliminary interviews and parole revocation hearings. After several hours were spent discussing the alternatives offered in Form 59A,[1] appellant elected to admit the violation and postpone the interview to allow his mother to appear and offer mitigating evidence. He indicated that he did not intend to procure legal assistance. Accordingly, the interview was postponed and rescheduled for December 6, 1966. His mother, who resided in Winslow, was notified of the hearing date but because of inclement weather she was unable to appear.

The thirty days allowed for postponement of the preliminary interview having elapsed, and having received no request that the period be extended, the authorities apparently considered the matter of the local interview to be closed. The appellant then appeared before a United States Commissioner in connection with new Dyer Act charges pending in the District of Arizona. The charges were dismissed by the United States Attorney after he learned that appellant had 1310 days yet to serve as a result of his parole violation.

Appellant was returned to Leavenworth on January 27, 1967. Shortly thereafter, a parole officer advised him of his right to have a revocation hearing at which he could appear with retained counsel or present witnesses, or both. The appellant refused to sign a statement that would indicate a preference in the matter. On March 16, 1967, appellant was conducted to a revocation hearing where he again refused to sign Form 59A, but rather, persisted in his demand for a local hearing. Another institutional revocation hearing was scheduled for May, 1967. At that time, the appellant again appeared at the hearing and refused to sign a Form 59A. The examiner concluded from the appellant's previous admissions at the first interview, and from the facts presented in other documentary evidence, that he had indeed violated parole. On July 11, 1966, the appellant's mandatory release was formally revoked by the Board of Parole.

To sustain this application for habeas corpus, appellant asserts that he was denied due process because he was not provided with appointed legal counsel, because he was denied a local hearing, and because he was not granted his "opportunity to appear" within a reasonable time.

■■ This court recently declared in Earnest v. Willingham, 406 F.2d 681, that Fifth Amendment due process requires that a mandatory releasee be accorded the same protection regardless of his financial position. We concluded that a federal agency cannot grant to one individual even a nonconstitutional statutory right while at the same time denying it to another because of his poverty. Thus, because the Board allows legal counsel for those able to afford it, counsel must be appointed for those who are less fortunate. Appellant seizes upon that case to support his contention that as an indigent, he was entitled to appointed counsel.

■ It is clear, however, that we are not dealing with the right to counsel in the traditional or ordinary sense as exemplified in Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.[2]

---

1. Form 59A provides the parolee with essentially three options (1) he can admit or deny the charges and waive a local revocation hearing in favor of an institutional hearing upon being returned to the penitentiary; (2) he can deny the charges and request a local revocation hearing; or (3) he can admit the charges and request a postponement of the preliminary interview for up to 30 days in order to secure witnesses or an attorney, or both.

2. This was indicated by Chief Judge Murrah when he quoted from Washington v. Hagan, 287 F.2d 332 (3d Cir. 1960): "The period of contentious litigation is over when a man accused of crime is tried, defended, sentenced and, if he wishes, has gone through the process of appeal. Now the problem becomes one

This is rather a matter of preventing invidious discrimination between rich and poor. Absent such discrimination there is no necessity for appointed counsel. Therein lies the reason that the failure to appoint counsel was not a violation of due process in the case at bar. The appellant was not the victim of discrimination because he made it clear from the outset that he did not contest the operative facts of his violation.

This follows from the fact that although Earnest v. Willingham involved a disputed factual situation in which the releasee emphatically denied violating the conditions of release, this court noted with approval the statement by Chief Judge Sobeloff, concurring specially in Jones v. Rivers, 338 F.2d 862 (4th Cir. 1964), wherein it was indicated that "the situation is different in this case, since the parolee concedes that he has violated the conditions of his parole. Here the Parole Board is merely exercising its discretion as to whether, in light of the admitted violation, parole should be revoked. I agree that, usually in such situations, the purpose of the hearing is unlike that of an adjudicatory proceeding, and there is no requirement for the appointment of counsel." 338 F.2d at 878. Similarly, in this case the appellant at all times has admitted that he violated parole when he left the district without permission. He sought a hearing in order to present evidence that would persuade the Board to overlook the violation. In these circumstances, the failure to provide appointed counsel does not constitute invidious discrimination and therefore is not violative of due process.

■ With regard to the contention that the Board failed to provide a local hearing, we note the limited scope of judicial review in the area of parole violations. "Habeas corpus is a proper remedy to test only the jurisdiction of the Parole Board and other aspects of due process that are applicable to the limited rights of a parolee." Hayes v. Taylor, 324 F.2d 727 (10th Cir. 1963). One of the limited rights of a releasee is his statutory "opportunity to appear," 18 U.S.C. § 4207, which has been judicially [3] and administratively [4] construed to require a local hearing. If that statutory right has been denied then due process has been violated and this court is empowered to grant relief. Boddie v. Weakley, 356 F.2d 242 (4th Cir. 1966).

The court in Hyser v. Reed considered the varying positions of the several petitioners in the case and concluded: "Those who have not denied the charged violation of parole or any whose parole was revoked because of a criminal conviction would not now be benefited by a hearing which is designed specifically to make a record only in cases where the fact of violation is controverted." 318 F.2d at 246. Subsequent cases in which the courts have been confronted with the question of whether an admitted violator is entitled to a hearing in the geographic area where the violations have occurred, have agreed that a local hearing is not required.[5]

---

of an attempt at rehabilitation. The progress of that attempt must be measured, not by legal rules, but by the judgment of those who make it their professional business. So long as that judgment is fairly and honestly exercised we think there is no place for lawyer representation and lawyer opposition in the matter of revocation of parole." 406 F. 2d at 683.

3. Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963).

4. 28 C.F.R. §§ 2.40 and 2.41.

5. "If the District Court finds that the parolee no longer persists in his innocence of a violation, or if he otherwise indicates a desire to waive the local hearing, then of course the court need not order such a hearing." Josey v. United States Board of Parole, 116 U.S. App.D.C. 8, 320 F.2d 730 (1963); Starnes v. Markley, 343 F.2d 535 (7th Cir. 1965) cert. den. 382 U.S. 908, 86 S.Ct. 246, 15 L.Ed.2d 160; Hodge v. Markley, 339 F.2d 973 (7th Cir. 1965) cert. den. 381 U.S. 927, 85 S.Ct. 1564, 14 L.Ed.2d 685.

The appellant was offered the regulatory alternatives embodied in Form 59A. He chose to admit the violation and postpone the local preliminary interview. This course was followed and the hearing rescheduled. When the postponed hearing defaulted because of the failure of the witness to appear, the thirty day postponement period elapsed and with it the unqualified right to a local interview. As provided in the regulations, any further postponement was within the discretion of the Board.[6] "Having been offered the regulatory alternatives he cannot now be heard to complain." Earnest v. Willingham, 406 F.2d at 683 n. 2.

There remains the question of the effect of the lengthy delay between the arrest in November, 1966, and the convening of the institutional revocation hearing in May, 1967—a period of approximately six months.[7] The district court found, and we agree, that much of the delay was the result of appellant's refusal to cooperate. In such circumstances the delay is usually not deemed to be prejudicial. United States ex rel. Obler v. Kenton, 262 F.Supp. 205, 212 (D.Conn.1967). Furthermore, it is clear that delay in and of itself will not invalidate custody "once the hearing is held * * * and the fact of violation is fairly adjudicated * * *." Letellier v. Taylor, 348 F.2d 893, 894 (10th Cir. 1965). Since the fact of violation was admitted and inasmuch as appellant was provided with a hearing in which he could have stated his case for mitigation, the "opportunity to appear" has been satisfactorily preserved.

Affirmed.

6. "A postponement beyond 30 days will not be granted except in the discretion of the Board." Form 59A. "Once the violation is established or admitted, the exercise of discretion in determining whether or not parole should be revoked, represents a very high form of expert regulatory and administrative judgment and the expert appraisal of the Parole Board in this area can be regarded as almost unreviewable." Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 240 (1963).

7. The revocation hearing is not to be confused with the local preliminary interview. The appellant apparently does not contest the provision in the regulations providing that once a violation is admitted the violator is entitled to a local preliminary interview but not a local hearing on the matter of the revocation itself. In any event, the difference between "interview" and "hearing" is perhaps more apparent than real.