Earl VAN BLARICOM,
Petitioner-Appellant,

v.

Donald FORSCHT, as United States
Marshal, Respondent-Appellee.

No. 72–1374.

United States Court of Appeals,
Fifth Circuit.

April 18, 1975.

J. V. Eskenazi, Federal Public Defender, Theodore J. Sakowitz, Asst. Federal Public Defender, Miami, Fla., for petitioner-appellant.

Robert W. Rust, U. S. Atty., Carol M. Anderson, James L. Whitten, Asst. U. S. Attys., Miami, Fla., for respondent-appellee.

Before BROWN, Chief Judge, and RIVES, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

PER CURIAM:

This cause has already received extensive consideration by our Court, both en panel and en banc.[1] In our earlier en banc opinion, we vacated the panel opinion and declined to consider Van Blaricom's appeal on the ground that he was unlawfully at large, had violated the conditions of his appeal bond, and was therefore not available and subject to any judgment we might enter. Van Blaricom moved for reinstatement of this appeal since he was in federal custody under another name in California. We granted his motion. He is at last report serving a five year sentence on another conviction at McNeil Island,

1. Van Blaricom v. Forscht, 473 F.2d 1323 (1973) (original panel opinion); 489 F.2d 1034 (1974) (panel opinion on rehearing); 490 F.2d 461 (1974) (prior en banc opinion).

Washington. He has 69 days remaining to be served for the parole violation.

Since the facts of the case are detailed in our earlier opinions, we will say no more here than that Van Blaricom admittedly violated the conditions of his federal parole, as a result of which it was revoked by a vote of two out of three members of the eight-man Parole Board, employing procedures which did not meet *Morrissey*[2] standards of procedural due process—but before *Morrissey* came down. The district court's denial of Van Blaricom's petition for habeas corpus was originally reversed by our panel on both statutory and constitutional grounds.[3] On rehearing, however, the panel withdrew the portion of its opinion discussing constitutional matters as unnecessary to its decision.[4] The panel's holding, then, upon which we granted en banc consideration, was grounded solely in construction of the relevant statute:[5] ". . . that the procedure employed in revoking appellant's parole was improper because only two out of three members of the eight-man Board voted for revocation of his parole, while the statutory mandate, 18 U.S.C. § 4207, and the implementing regulation, 28 C.F.R. § 2.40, call for revocation *by the Board*."

2. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

3. 473 F.2d 1323 (1973).

4. 489 F.2d 1034 (1974).

5. And a Board regulation implementing it.

6. Emphasis added. 489 F.2d at 1034.

7. In its form at the time, the implementing regulation fleshed out the statute considerably, but imposed no additional requirements relevant to our decision:

"28 C.F.R. § 2.40 *Revocation by the Board.*

"A prisoner who is retaken pursuant to a warrant issued by the Board or a member thereof shall, while being held in custody under authority of such warrant awaiting possible return to a Federal institution, be afforded a preliminary interview by an official designated by the Board. Following receipt of a summary or digest of the preliminary interview, the Board shall afford the prisoner an opportunity to appear before the Board, a member thereof, or an

. . .[6] En banc, both the constitutional and statutory issues were reargued and we consider both here. For reasons to be stated, the panel opinion having been vacated by our earlier en banc opinion, we affirm the judgment of the district court.

### Statutory Matters

█ As our original panel opinion notes, the statutory procedural requirements for revocation of parole of a federal prisoner are succinctly stated in three one-sentence paragraphs in 18 U.S.C. § 4207:

A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board.

The Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof.

If such order of parole shall be revoked and the parole so terminated, the said prisoner may be required to serve all or any part of the remainder of the term for which he was sentenced.[7]

examiner designated by the Board. If the prisoner requests a local hearing prior to return to a Federal institution in order to facilitate the retention of counsel or the production of witnesses, and if he has not been convicted of a crime committed while under community supervision, and if he denies that he has violated any condition of his release, he shall be afforded a local revocation hearing reasonably near the place of the alleged violation (or one of the alleged violations if more than one is alleged). Otherwise, he shall be given a revocation hearing after he is returned to a Federal institution. Following the revocation hearing, the Board may then or at any time within its discretion revoke and terminate the order of parole or mandatory release or modify the terms and conditions thereof. Whenever a parole or mandatory release is thus revoked, the prisoner may be required to serve all or any part of the remainder of the term for which he was sentenced, less such good time as he may earn following his recommitment."

Our panel concluded that, since the statute required revocation by "the Board," action by a quorum consisting of at least a majority of the eight-member Board was necessary to revoke a parole. Since Van Blaricom's had been revoked by vote of two of a three-member panel of the Board, that action was therefore deemed invalid. We have concluded that this view of the Board's power over its own internal arrangements and procedures represents an unduly restrictive construction of 18 U.S.C. § 4207.

We elect instead to follow, as the sounder view, the reasoning and holding of the Tenth Circuit on the same question, which was presented in its cause of Earnest v. Moseley, 426 F.2d 466 (1970):

> Title 18 U.S.C. § 4207 provides for a revocation hearing before the Board, a member of the Board, "or an examiner designated by the Board." It then provides:
>
>> "The Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof."
>
> We see nothing in this language which would compel the conclusion that the entire Board must decide on every parole revocation. The creation of the Board and Congress' vesting in it a very broad discretion carries with it an inherent authority to establish such procedures as will best effectuate Congress' purpose in establishing the Board and the parole system. The Court in Hyser v. Reed, 115 U.S.App. D.C. 254, 318 F.2d 225, 242 n. 14, noted that for the fiscal year 1960 the Parole Board held 12,640 hearings of all types and issued 1,016 warrants for the arrest of parole violators and 670 warrants for the arrest of mandatory release violators. To too narrowly circumscribe the authority of the Board to establish its own internal procedures and effectively distribute its work load would impose an undue burden on the Board and, indeed, the entire parole system. As this court said in Christianson v. Zerbst, 89 F.2d 40 (10th Cir.), the proceedings of the Board in revoking the parole or conditional release are presumptively correct. Unless it is clearly shown that the procedures established by the Board are clearly discriminatory or so lacking in fundamental fairness as to deprive the parolee or releasee of due process, or that those procedures are clearly contrary to the statutes creating and regulating the Board, the court will not attempt to substitute its judgment for that of the Board. 426 F.2d at 469.

### The Constitutional Claims

■ Van Blaricom contends that the *Morrissey* due-process requirements, though expressly made "applicable to future revocations of parole" by that opinion, are not so made non-retroactive as to *federal* revocations and that, moreover, the requirements of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), handed down before the Board's action on his parole, should apply to invalidate its revocation. We are not persuaded.

It is true that *Morrissey* concerned the rights of a state parolee, and perforce addressed itself to these.[8] The Court spoke, however, of due process; it has not indicated, nor do we see any reason why, these due process requirements should differ significantly in their direct application to the Federal parole authority from their indirect application to the State's via the 14th Amendment. And in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, the Court seemingly went out of its way to characterize *Morrissey* as non-retroactive as to both types of sovereign:

> "If Morrissey-Scarpelli rules are not retroactive out of consideration for burden on federal and state officials, this case is a fortiori." 418 U.S. 539, 94 S.Ct. at 2983, 41 L.Ed.2d at 961.

---

8. "The few basic requirements set out above, which are applicable to future revocations of parole, should not impose a great burden on any State's parole system." 408 U.S. at 490, 92 S.Ct. at 2604, 33 L.Ed.2d at 499.

618

If these be dicta, they are dicta from on high, and we are not inclined to disregard their counsel.

Nor are we inclined to achieve the same result—retroactivity of *Morrissey* —by applying the principles of *Goldberg* to Van Blaricom's hearing. *Morrissey* represents little more than an extension and application of *Goldberg* principles from its welfare context to that of parole matters. But principles of due process are flexible, not subject to uncritical transfer from one factual setting to another; and the decision so to extend them is itself one of weight and moment. *Goldberg* did not by its terms control parole contexts, nor was its extension to them foreordained by it. The Supreme Court has indicated that they are to apply to parole hearings from *Morrissey's* time forward, not from *Goldberg's*. There it ends.

Affirmed.

RIVES, Circuit Judge, with whom WISDOM, GOLDBERG, and GODBOLD, Circuit Judges, join, dissenting.

I respectfully dissent for the reasons stated in Part I of the original panel opinion, 473 F.2d 1323 at 1326–1328, and in the panel opinion on rehearing, 489 F.2d 1034–1036.